1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7

8    FARIBA Z. MADISON,                          No. C-14-4934-EMC

9              Plaintiff,

10        v.                                      **ORDER GRANTING PLAINTIFF'S
                                                  MOTION TO REMAND ACTION TO
11   U.S. BANCORP, *et al.*,                      STATE COURT**

12             Defendants.                        **(Docket No. 20)**
     _____/
13

14

15        Plaintiff Fariba Madison filed this lawsuit in Alameda County Superior Court against her

16   former employer, Defendant U.S. Bancorp, Inc. (USBI), and two related corporate entities.[1]  *See*

17   Defendants' Notice of Removal (Docket No. 1), Ex. A (Complaint).  Madison's complaint, which

18   purports to bring representative claims on behalf of similarly situated employees of USBI, alleges

19   that Defendants violated the California Private Attorneys General Act of 2004 (PAGA).[2]  *See*

20   *generally* Complaint.  Specifically, Madison alleges that USBI violated PAGA by: (1) requiring its

21   employees to sign and remain bound to an "illegal" non-compete provision, in violation of Labor

22   Code section 432.5; and (2) failing to pay all wages due and owing upon an employee's separation

23   from employment, in violation of Labor Code sections 201-203.  *See id.* at 5-6.  Critically, Madison

24   did *not* bring causes of action for USBI's alleged underlying (or predicate) Labor Code violations.

25

26

27   _____

28        [1] For the sake of simplicity the Court refers to all three entities collectively as USBI.

         [2] Codified at Cal. Lab. Code §§ 2698-2699.5.

United States District Court
For the Northern District of California

1   *See id.* at 7.  Rather, Madison solely requests civil penalties and reasonable attorneys' fees under

2   PAGA.

3        On November 6, 2014, Defendants removed this action to federal court.  According to USBI,

4   removal is permissible because the parties to this action are completely diverse, and the amount in

5   controversy more likely than not exceeds $75,000.  Because Defendants have not established by a

6   preponderance of the evidence that the amount in controversy requirement is satisfied, this case will

7   be remanded to Superior Court.

8   ## I.    BACKGROUND

9        Madison was employed as a financial adviser at USBI from February 13, 2006, until she was

10  terminated on October 17, 2012.  *See* Notice of Removal, Bodeux Decl. at ¶ 2 (Docket No. 1-2).

11  After she was fired, Ms. Madison sent a demand letter to Defendants claiming that she was owed

12  unpaid commissions in excess of $100,000.  *Id.* at ¶ 4.  Defendants paid Madison $13,841.94 in

13  commissions on November 13, 2012, but have not paid any additional sums to Madison.  *See id.* at ¶

14  5; *see also* Defendant's Opposition to Plaintiff's Motion to Remand at 4 (Docket No. 26).

15       On November 14, 2012, USBI sued Madison in Orange County Superior Court for

16  misappropriation of trade secrets, breach of contract, and related claims.  Goodrich Decl. at ¶ 3

17  (Docket No. 1-4).  USBI's principal allegation was that Madison had violated a Confidentiality and

18  Non-Solicitation Agreement (the Agreement) Madison signed when she was first hired by U.S.

19  Bancorp.  *Id.*  Ultimately, USBI's claims were submitted to arbitration, and the arbitrator sided with

20  the company.  *Id.* at ¶ 4.  The arbitration panel enjoined Madison from, among other things,

21  "soliciting business" from Defendants' clients or otherwise using information she had taken from

22  Defendants' computer system before she was terminated.  Goodrich Decl., Exhibit 6 (Arbitration

23  Award) at 6-7.[3]  The Arbitration Award was later confirmed by the Superior Court.  Goodrich Decl.

24  at ¶ 4.

25       On October 15, 2013, Madison sent a letter to the California Labor and Workforce

26  Development Agency (LWDA) in order to comply with the exhaustion requirements for bringing a

27  _____

28      [3] Defendants erroneously labeled the Arbitration Award as "Exhibit 3," when it is actually Exhibit 6 to the Goodrich Declaration.

United States District Court

For the Northern District of California

1   PAGA action against her employer.  Grover Decl., Exhibit A (Docket No. 20-2).  Madison contends

2   in the letter that U.S. Bancorp violated numerous provisions of the California Labor Code, including

3   sections 201-203, which provide that an employee must be paid all wages due and owing at the time

4   of their separation from their employer, and section 432.5, which prohibits employers from requiring

5   "any employee . . . to agree, in writing, to any term or condition which is known by such employer .

6   . . to be prohibited by law."  Cal. Lab. Code § 432.5.  Madison contends that the "non-compete"

7   portion of the Agreement between her and USBI is prohibited by California Business and

8   Professions Code section 16600, *et seq.*, and therefore USBI violated section 432.5 of the Labor

9   Code by requiring Madison to agree to those terms in the Agreement.  *See* Grover Decl., Exhibit A.

10  The LWDA did not respond to Madison's letter.  Grover Decl. at ¶ 3.

11       Madison filed this representative PAGA action in Superior Court on September 23, 2014.

12  *See* Complaint at 8.  In her complaint, Madison alleges that USBI violated PAGA where it failed to

13  pay its terminated employees all wages due and owing on the employee's date of separation from

14  employment, and where it required its employees to sign an allegedly illegal non-compete

15  agreement.  *Id.* at 3, 5-6.  But while these claimed violations of the Labor Code constitute the

16  predicate violations on which Madison's PAGA claims are based, Madison does not bring any

17  "direct" claims for violation of the Labor Code.  That is, Madison's complaint does not seek to

18  recover any portion of the nearly $100,000 in unpaid wages she apparently believes she was owed

19  on the date of her termination, nor does she seek damages or injunctive relief as a consequence of

20  being forced to sign an allegedly illegal non-compete agreement.  Rather, her complaint only prays

21  for all available relief available under PAGA – namely civil penalties for USBI's predicate

22  violations of the Labor Code, along with reasonable attorneys' fees and costs.  *See* Complaint at 7.

23       Defendants removed on November 15, 2014.  *See* Notice of Removal.  The litigants agree

24  that there is complete diversity of citizenship between the parties.  However, they vigorously dispute

25  whether the amount in controversy meets or exceeds $75,000.

26  ///

27  ///

28  ///

3

United States District Court
For the Northern District of California

## II.   DISCUSSION

U.S. Bancorp advances various arguments it claims demonstrates that the amount in controversy in this matter exceeds $75,000.  The Court first lays out the various law applicable to this motion to remand, and then addresses (and rejects) each of USBI's arguments in turn.

A.      Applicable Legal Standards

     1.      Establishing Diversity Jurisdiction Generally

To invoke federal diversity jurisdiction under 28 U.S.C. § 1332(a), the amount in controversy in the action must exceed $75,000.  *See Urbino v. Orkin Services of California*, 726 F.3d 1118, 1121 (9th Cir. 2013).  "Where, as here, it is unclear or ambiguous from the face of the state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold."  *Id.* at 1121-22 (internal quotation marks and citations omitted).   "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992); *accord Patel v. Nike Retail Servs, Inc.*, -- F. Supp. 2d --, No. 14-cv-00851-JST, 2014 WL 3611096, at *2 (N.D. Cal. Jul 21, 2014).  Thus, the Court must resolve any ambiguity in favor of remand.  *See Patel*, 2014 WL 3611096, at *2.

In its opposition to Plaintiff's motion to remand, USBI argues that the Supreme Court recently overruled (or at least called into significant doubt) any rule – like the one stated in *Patel* and *Gaus* – that might reflect a "presumption against" removal.  *See* Defendant's Opposition Brief at 7 (Docket No. 26).  USBI appears mistaken.  In *Dart Cherokee Basin Operating Co., LLC v. Owens*, the Court ruled that there is no anti-removal presumption in cases removed under the Class Action Fairness Act (CAFA).  135 S. Ct. 547, 554 (2014).  The Court explicitly refused to decide, however, "whether such a presumption is proper in mine-run diversity cases."  *Id.*  And the actual holding of *Dart* similarly does not undermine this Circuit's existing binding case law regarding removal.  *See Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002) (stating the circuit authority can only be overruled where an "intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point").  Rather, the Court simply held

that where, unlike here, the plaintiff does *not* contest the defendant's amount in controversy calculation, the defendant need only allege the amount in controversy in the notice of removal with reasonable plausibility, rather than try to establish the figure with evidentiary proof. *Dart Cherokee Basin*, 135 S. Ct. at 554. But, "when the plaintiff contests, or the court questions, the defendant's allegation" regarding the amount in controversy, the Court was clear that "[e]vidence establishing the amount is required," and that the removing party must establish that the jurisdictional amount is met by a preponderance of the evidence. *Id.* Put simply, nothing in *Dart* calls into question or undermines existing Ninth Circuit precedent that in a "mine-run diversity case," *id.* at 554, the court must resolve "all ambiguity in favor of remand." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

    2.    Calculating the Amount in Controversy in a PAGA Action

Specifically in the context of removed representative PAGA actions, the Ninth Circuit has held that the claims of multiple plaintiffs cannot be aggregated to satisfy the amount in controversy requirement. *Urbino*, 726 F.3d at 1122-23; *see also id.* at 1122 (reaffirming the "traditional rule . . . that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement"). Instead, only the value of the named plaintiff's claims may be considered for the purposes of determining the amount in controversy. *Id.* at 1122-23 (holding that diversity jurisdiction did not lie because the plaintiffs' "claims cannot be aggregated"); *see also Patel*, 2014 WL 3611096, at *10 (following *Urbino* in holding that only the civil penalties recoverable by the named plaintiff may be considered to "clear the jurisdictional hurdle"). Thus, when considering the possible amount of civil penalties that could be at stake in this litigation were Madison to prevail, the only relevant penalties are those Madison herself, as the sole named plaintiff, may ultimately recover.[4]

---

[4] Madison seems to argue that only 25% of the available civil penalties she could recover should count towards the amount-in-controversy threshold, because under PAGA "75% of the penalties [recovered] are paid to the State of California's LWDA, and only 25% are distributed to the aggrieved employees." *Patel*, 2014 WL 3611096, at *9. The Ninth Circuit has not ruled on this issue, although the *Patel* court capably explains why the entire amount of PAGA penalties (not just 25% of that amount) should likely be considered in controversy when deciding a remand motion. *See id.* Ultimately, this Court will not rule on the issue one way or another: Even if the Court considers 100% of the civil penalties attributable to Madison to be in controversy in this action, the

United States District Court
For the Northern District of California

In addition to civil penalties, Madison's complaint also prays for reasonable attorneys' fees if she succeeds on her PAGA claims. The amount in controversy includes attorneys' fees if such fees are authorized by statute, as they are under PAGA. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). In the PAGA context, the Ninth Circuit has not specifically addressed whether the total amount of attorneys' fees (*i.e.*, the aggregate amount of fees) should be considered in determining the amount in controversy, or whether only the named plaintiff's share of any recoverable fees should be considered. But courts in this district have concluded, following *Urbino*, that "only the portion of attorney's fees attributable to [the named plaintiff's] claims count towards the amount in controversy." *Patel*, 2014 WL 3611096, at *14; *see also Garrett v. Bank of Am., N.A.*, No. 13-cv-05263-JST, 2014 WL 1648759, at *8 (N.D. Cal. Apr. 24, 2014). As Judge Tigar has persuasively explained, "[w]hen the rule is that claims are not aggregated . . . as it is now for PAGA actions under *Urbino*, it would seriously undermine the anti-aggregation rule to allow attorney's fees to be allocated solely to a named plaintiff in determining the amount in controversy." *Patel*, 2014 WL 3611096, at *14 (internal quotation marks, modifications, and parenthesis omitted) (citations omitted). Thus, the amount of attorneys' fees likely to be recovered in a PAGA action should be "distributed *pro rata* to all aggrieved employees" the named plaintiff seeks to represent.[5] *Id.*

B.  <u>USBI Wrongly Includes Unpaid Wages in the Amount in Controversy Calculation</u>

Defendants first argue that Madison "admits" that over $100,000 is at stake in this litigation because some of her claims "are based on Defendant's alleged failure to pay her over $100,000 in commissions as unpaid wages due at termination." Opp. Brief at 9. Essentially, USBI argues that because Madison's PAGA claims are predicated on alleged violations of sections 201-203 of the Labor Code – which provide that all wages due and owing at the time of separation must be paid

---

jurisdictional amount is still not met.

[5] Defendants argue that the Court should not follow *Patel* because all attorneys' fees awarded in this case will eventually go to the same attorneys, and thus the Court should consider the aggregate amount of attorneys' fees these lawyers will receive when deciding whether it has jurisdiction over this case. Defendants cite no authority for its contention, and adoption of such a rule would "defeat the purpose of disallowing claim aggregation in the first place," and allow defendants to "evade an otherwise applicable deficit in the amount in controversy." *Garrett*, 2014 WL 1648759, at *9.

United States District Court

For the Northern District of California

1  immediately – and Madison has claimed *in a separate demand letter* that the amount of wages due

2  and owing to her at the time of her separation exceeded $100,000, the amount in controversy

3  requirement is met.  USBI is mistaken.

4      Defendants' entire argument is premised on a misreading of Madison's complaint.  Madison

5  does not *directly* allege that USBI violated sections 201-203 of the Labor Code, and more

6  importantly, nowhere in Madison's complaint does she request that this Court award her any portion

7  of the $100,000 in unpaid wages she might be owed.  *See* Complaint at 7.  In fact, Madison's

8  complaint is entirely silent about the amount of wages that she was owed on separation from her

9  employment.  *See generally* Complaint.  Madison's complaint pleads only two causes of action, both

10  brought under PAGA, and both requesting only civil penalties.

11      Indeed, civil penalties are the only relief available under PAGA.  *See Villacres v. ABM*

12  *Indus. Inc.*, 189 Cal. App. 4th 562, 579 (Cal. 2010) ("The PAGA is limited to the recovery of civil

13  penalties") (emphasis omitted).  As the California Court of Appeal has made clear, restitution is not

14  the "object of a PAGA action." *Id.* at 578.  Rather, "an action under the PAGA is in the nature of an

15  enforcement action, with the aggrieved employee acting as a private attorney general to collect

16  penalties from employers who violate labor laws.  Such an action is fundamentally a law

17  enforcement action designed to protect the public and penalize the employer for past illegal

18  conduct." *Id.*  Hence, the "employee plaintiff represents the same legal right and interest as state

19  labor law enforcement agencies – namely, recovery of civil penalties that otherwise would have

20  been assessed and collected by the Labor Workforce Development Agency." *Id.* at 579.

21      Despite the fact that Madison has not brought a direct cause of action under Labor Code

22  sections 201-203, has not prayed for any damages (as opposed to penalties) for USBI's alleged

23  violation of those provisions, and can only recover limited civil penalties if her PAGA claims are

24  successful, USBI further argues that the Court should consider at least $100,000 at stake in this

25  lawsuit because even if the Court does not award Madison any unpaid wages, it necessarily must

26  determine whether USBI failed to pay Madison her owed wages in order to determine whether a

27  predicate violation actually occurred.  This argument proceeds in two parts, both of which are

28  unpersuasive.

**United States District Court**
For the Northern District of California

First, Defendants seem to argue that the $100,000 Madison does not ask for in her complaint must nevertheless count towards the amount in controversy because this Court "necessarily" has to adjudicate the amount of wages owed Madison in order to determine whether a predicate violation of PAGA occurred. Tellingly, Defendants cite no relevant case for the proposition that amounts not actually sought in the complaint should be counted towards the amount in controversy requirement simply because the calculation of those amounts may be derivatively necessary to adjudicating the Plaintiff's actual claims.[6] And at least one court has wisely rejected such an argument. *See Jackson v. Specialized Loan Servicing, LCC*, No. CV 14-05981 MMM (PLAx), 2014 WL 5514142, at *11 (C.D. Cal. Oct. 31, 2014). As the *Jackson* court explained, it is "well-settled that whatever the collateral effects a decree or judgment might have by virtue of *stare decisis*, collateral estoppel, or any other impact on the rights or interests of the parties to the action or third parties cannot be taken into account in calculating the amount in controversy." *Id.* (internal modification and quotation marks omitted) (quoting 14 AA Wright, FEDERAL PRACTICE & PROCEDURE, Jurisdiction § 3702.5). Defendants simply cannot escape the fact that even if this Court were to determine that Madison was owed $100,000 at termination, and further determine that USBI unlawfully failed to pay her that amount in violation of the Labor Code, the $100,000 in owed wages still would not be in

///
///
///
///
///
///
///

---

[6] Defendants cite only *Libby, McNeill & Libby v. Libby*, 103 F. Supp. 968, 969 (D. Mass. 1952) in support of its position, but that case stands for nothing more than the common rule that the amount in controversy is determined at the time the action is removed. In *Libby*, the Plaintiff waived his request for damages after removal, and the court correctly observed that this waiver did not destroy diversity jurisdiction because the amount in controversy was satisfied at the time of removal when the damages request was still live.

United States District Court
For the Northern District of California

1   controversy here because Madison could never collect them in this action.[7]  Rather, Madison's

2   recovery in this PAGA action is limited to a substantially smaller amount in civil penalties.

3          Even more fundamentally, Defendants appear incorrect that this Court would necessarily

4   have to adjudicate the precise *amount* of wages owed Madison when she was fired in order to

5   determine whether a predicate violation of the PAGA occurred.  PAGA is violated where an

6   employer fails to pay any wages due and owing on termination, as required under sections 201-203

7   of the Labor Code.  *See* Cal. Lab Code § 201(a) ("If an employer discharges an employee, the wages

8   earned and unpaid at the time of discharge are due and payable immediately.")  Thus, in order for

9   Defendants to be liable under PAGA the Court need only determine that: (1) *some* amount of wages

10  were due to Madison at the time of her termination; and (2) these wages were not paid by USBI.

11  Indeed, Defendants appear to concede that they violated the Labor Code in their opposition brief,

12  stating as fact that Madison was fired on October 17, 2012, but admitting that USBI did not pay her

13  $13,841.94 until November 13, 2012.  Opp. Brief at 4.  If Madison can prove that this is true, she

14  may well have established a predicate violation of PAGA without submitting any proof that she was

15  ever owed amounts in excess of the jurisdictional amount.

16         Defendants alternatively (but relatedly) argue that Madison simply cannot bring a "naked"

17  PAGA claim, because the success of any PAGA claim necessarily depends on the Court's

18  adjudication of the underlying predicate violation(s) of the Labor Code.  According to Defendants,

19  because Madison's PAGA claim for violation of sections 201-203 cannot be adjudicated without

20  making the predicate determination that those sections have in fact been violated, Madison's PAGA

21  claim cannot be adjudicated without this Court conclusively determining that Madison is (or is not)

---

23  [7] Defendants argue that because they might be collaterally estopped from challenging any
    judgment this Court might enter as to whether Madison was owed wages at the time of her
24  separation from employment, the amount in controversy requirement is satisfied because any
    adjudication in this Court could be binding on them in subsequent proceedings to collect unpaid
25  wages.  Again, Defendants cite no authority for this contention, and at least the *Jackson* court has
    firmly rejected it.  *See* 2014 WL 5514142, at *11 (holding court should not consider collateral
26  consequences of a judgment when calculating the amount in controversy).  In any event, as
    discussed further in the main text below, it is not obvious that Madison could use a judgment from
27  this court offensively in another court where Madison could have brought, but chose not to bring,
    her direct Labor Code causes of action in this litigation.  *See generally Villacres*, 189 Cal. App. 4th
28  at 584-85 (holding that a PAGA claim was barred by res judicata because it was not brought along
    with a previously adjudicated claim for direct violations of the Labor Code).

United States District Court

For the Northern District of California

1   owed unpaid wages that could total more than $100,000.  Defendants are once again mistaken.[8]

2   Indeed, the leading PAGA case in this Circuit is one, like Madison's, where the plaintiffs sued their

3   employer solely for PAGA penalties, not unpaid wages.  *See Urbino*, 726 F.3d at 1121 (Plaintiff

4   brought only PAGA claims alleging that his employer "illegally deprived him and other nonexempt

5   employees of meal periods, overtime and vacation wages, and accurate itemized wage statements");

6   *see also Villacres*, 189 Cal. App. 4th at 581 (refusing to decide whether "the primary rights theory

7   treats all wage-related Labor Code violations and PAGA penalties as a single cause of action or

8   whether, as Villacres contends, every Labor Code violation and PAGA penalty involves a separate

9   primary right").  Moreover, even if Defendant is correct that Madison cannot bring her direct Labor

10  Code claims for unpaid wages separately from her PAGA claims without engaging in improper

11  "claim splitting," that contention is ultimately irrelevant here.  If, as Defendants contend, Madison

12  was required to bring her claim for unpaid wages at the same time as her PAGA claim, then

13  Madison may be estopped from asserting such a claim in a later-filed lawsuit where she could have

14  asserted that cause of action here.  *See Villacres*, 189 Cal. App. 4th at 584-85 (holding that a PAGA

15  claim was barred by res judicata because it was not brought at the same time as a previously

16  adjudicated claim for direct violations of the Labor Code, even though the claims were intimately

17  related and could have been brought together in one lawsuit).  Thus, if USBI is correct, Madison will

18  not be able to recover her unpaid wages because she has effectively waived her direct Labor Code

19  claims by failing to bring them at the same time as her PAGA claims arising out of the same nucleus

20  of operative facts.  But regardless of the merits of Defendants' claim splitting argument, one thing

21

22   _____

23   [8] In support of its position, Defendant cites *Wentz v. Taco Bell Corp.*, No. CV F 12-1813 LJO DLB, 2012 WL 6021367, at *4-5 (E.D. Cal. Dec. 4, 2012).  At best, *Wentz* stands for the proposition that where a plaintiff asserts *both* direct Labor Code causes of action *and* PAGA claims predicated on violation of those same Labor Code sections, the plaintiff cannot litigate the direct claims and the PAGA claims in different forums.  In *Wentz* the district court previously severed plaintiff's direct Labor Code claims from his PAGA claims and then remanded just the direct Labor Code causes of action to state court.  *Id.*  The Court later determined that the PAGA claims should also be remanded to state court because they could not be maintained without the "necessary underlying allegations." *Id.*  Given the procedural posture of *Wentz*, it made eminent sense to remand the PAGA claims to be tried together with the underlying predicate claims in order to avoid duplication of effort and piecemeal litigation.  But the decision in *Wentz* does not persuasively establish that PAGA claims must be always tried together with direct claims for violation of the Labor Code, particularly where the plaintiff has never asserted direct claims in any forum.

United States District Court

For the Northern District of California

1    remains certain – even if Madison can recover $100,000 in unpaid wages in a separate action, she

2    cannot recover those wages here.  Thus, any amount of unpaid wages owed Madison is irrelevant

3    when determining whether the amount in controversy exceeds $75,000.

4    C.    USBI Wrongly Includes Possible Waiting Time Penalties in the Amount in Controversy

5          Calculation

6          Defendants also argue that the amount in controversy here should include "waiting time

7    penalties" that they claim Madison seeks to recover in her complaint.  *See* Opp. Br. at 13-15.  Again,

8    Defendants are wrong.  Madison's complaint is for civil penalties under PAGA only.  She cannot

9    hope to recover any other relief as her complaint was pleaded at the time of removal.  Thus, the

10   Court rejects Defendants' request that it consider waiting time penalties Madison does not seek

11   when determining the amount in controversy.  *See Patel*, 2014 WL 3611096, at *3 (reiterating the

12   general rule that "federal courts permit individual plaintiffs, who are the masters of their complaints,

13   to avoid removal to federal court") (internal modification and quotation marks omitted) (citations

14   omitted).

15   D.    USBI Wrongly Includes the Value of Injunctive Relief in its Calculations

16         USBI next argues that the amount in controversy in this case should include the value of any

17   injunctive relief Plaintiff might obtain if she succeeds in getting the Agreement declared illegal.  *See*

18   *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958-59 (9th Cir. 2001)

19   (explaining that where a plaintiff in a representative suit seeks an injunction, the district court can

20   consider the value to the plaintiff of an injunction running in his favor when determining whether

21   the amount in controversy is met).  This argument has multiple fatal flaws, but the Court need note

22   only one:  Madison has not sought an injunction prohibiting enforcement of the Agreement, and

23   injunctive relief is not authorized under PAGA.  *See Villacre*, 189 Cal. App. 4th at 579 ("The PAGA

24   is limited to the recovery of civil penalties.") (emphasis omitted).  Thus, Defendants' contention that

25   the Court consider the potential costs or value of any injunctive relief is rejected.  *Cf. Jackson*, 2014

26   WL 5514142, at *11 (noting that defendant "cites no authority in support of its theory that a court

27   can treat a plaintiff's damages prayer as a *de facto* request for injunctive or declaratory relief, and

28   conclude that the amount in controversy requirement is, for this reason, satisfied").

United States District Court
For the Northern District of California

E.      Madison's Recoverable PAGA Penalties and Her *Pro Rata* Share of a Reasonable Attorneys'
        Fees Award Do Not Exceed $75,000

        Having rejected all of Defendants' other attempts to inflate the amount of controversy in this action, the Court will now consider those two sums which actually *are* in controversy, namely the amount of Madison's recoverable civil penalties and her *pro rata* share of any recoverable attorneys' fees.

        In Defendants' Notice of Removal, USBI asserts that Madison's recoverable PAGA penalties "would total approximately $10,500 for penalties for violation of Labor Code Section 201 or 202" and would "total approximately $10,500" for the "alleged violation of Labor Code Section 432.5."[9] *See* Notice of Removal at 7.  USBI notes that Madison sued three defendants, and thus the Court should find that Madison could potentially recover $63,000 worth of civil penalties in this action. Madison vigorously disputes USBI's estimate, and contends that she will only be entitled to personally recover $200 in civil penalties if her litigation succeeds.

        Because the Court is convinced that USBI has significantly miscalculated the amount in controversy, it need not definitively calculate the precise amount of civil penalties potentially at issue in this litigation.  Most notably (and dispositively), USBI's estimates of the potentially recoverable civil penalties in this action assume that Madison will be able to recover civil penalties for an entire year's worth of pay periods.  But PAGA claims are subject to a one-year statute of limitations.  *See* Cal. Code Civ. Proc. § 340(a); *see also Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1008 (N.D. Cal. 2007) (determining that the one-year statute of limitations in section 340(a) applies to PAGA claims).  Here, Madison was terminated by USBI on October 17, 2012.  *See* Notice of Removal, Bodeux Decl. at ¶ 2 (Docket No. 1-2).  This action was brought on September 23, 2014.  *See* Complaint at 8.  Thus, it appears that Madison's claims could be time-barred, and the amount in controversy in this action may well be zero.  *See, e.g.*, *Abad v. General Nutrition Centers,*

---

        [9] In the next sentence of the removal notice, Defendants claim that the total amount of civil penalties attributable to Madison is $51,403.20.  This number appears to have been pulled from thin air.  Because the figure is not explained, and the sum of the two specifically enumerated figures Defendant provided is $21,000, the Court assumes that $21,000 is the maximum amount of civil penalties Defendants allege that Madison could recover in this action against each Defendant.

1  *Inc.*, No. SACV 09-00190-JVS, 2013 WL 4038617, at *5 (C.D. Cal. Mar. 7, 2013) (holding that

2  PAGA penalties are not available for Labor Code violations that occurred during pay periods more

3  than one-year before the action was filed).  Plaintiff appears to argue that the action is timely

4  because she sent her LWDA notice letter on October 15, 2013, two days before the limitations

5  period in this case expired.  Thus, according to Plaintiff's theory, she has timely brought an action

6  for PAGA civil penalties, albeit for the sole pay period she was employed by USBI in the one year

7  before her letter was sent.  As noted elsewhere, the Court expresses no opinion as to the merits of

8  this contention.  But the Court does note that even viewed in the light most favorable to Defendants,

9  Madison would be entitled to recover at most $600 in civil penalties if she prevailed on both of her

10  predicate Labor Code violations ($100 per violation x 2 violations) against all three named

11  defendants ($200 x 3 defendants) as at most there is only one pay period for which a claim can

12  timely be stated.

13           The Court also notes with interest that in a motion to dismiss currently pending before this

14  Court, USBI explicitly argues that Madison's claims are time-barred. Docket No. 10.  Thus, at the

15  same time USBI argues in its notice of removal that Madison may be able to recover nearly $63,000

16  in civil penalties, it is arguing that Madison can recover no civil penalties at all in its motion to

17  dismiss.  The Court finds USBI's inconsistent positions disingenuous at best, and will not permit it

18  to benefit from such tactics.  *See generally Nada Pacific Corp. v. Power Eng'g and Mfg., Ltd.*, -- F.

19  Supp. 3d --, 2014 WL 5847604, at *6 (N.D. Cal. Nov. 10, 2014) (discussing doctrine of judicial

20  estoppel, which "prevents a party from benefitting by taking one position but then later seeking to

21  benefit by taking a clearly inconsistent position") (citations omitted).  In any event, and as noted

22  above, the Court assumes without deciding that the most Madison could personally recover in civil

23  penalties in this action is likely $600.

24           Presuming Madison could recover civil penalties in this action, she would then potentially be

25  eligible to recover reasonable attorneys' fees and costs.  USBI estimates in its opposition brief that

26  the entire plaintiff class will incur approximately $324,500 in total attorneys' fees in this action

27

28

**United States District Court**

For the Northern District of California

1   through trial.[10]  Madison argues that this estimate is inflated, but even if that's true, it does not affect

2   the outcome here.  USBI admits that there are at least nine potential plaintiffs (including Madison)

3   that could be eligible for PAGA penalties and fees in this case.  *See* Bodeux Decl. ¶ 6 (Docket No.

4   28).  Taking this as true, and dividing the total amount of attorneys' fees alleged ($324,500) by nine

5   yields Madison's *pro rata* share of the fees: $36,055.55.  Considered together with $600 in possible

6   civil penalties, this calculation yields an amount in controversy equal to $36,655.55.  Thus, even

7   uncritically accepting Defendants' figures as to the amount of potentially recoverable attorneys'

8   fees, the jurisdictional requirement is simply not met.  Thus, the case must be remanded to state

9   court.

### III.   CONCLUSION

11        Because Defendants have not shown by a preponderance of the evidence that the amount in

12   controversy in this action exceeds $75,000, this action is be remanded to Superior Court.

13        This order disposes of Docket No. 20.

15        IT IS SO ORDERED.

17   Dated:  January 27, 2015

19   _____
    EDWARD M. CHEN
    United States District Judge

---

27        [10]  Defendant's Notice of Removal originally estimated the total fees "from inception to trial
    to be approximately $247,500."  *See* Notice of Removal at 7; *see also* Sweeney Decl. at ¶ 4 (Docket
    No. 1-3).  It is unclear why Defendants now estimate in opposition that this figure should instead be
    $324,500.